Filed 4/16/13  P. v. Munguia CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MICHAEL HUMBERTO MUNGUIA,<br><br>    Defendant and Appellant. | B232339<br><br>(Los Angeles County<br>Super. Ct. No. KA090669) |

APPEAL from a judgment of the Superior Court of Los Angeles County. George Genesta, Judge.  Affirmed as modified.

Karyn H. Bucur, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.

_____

On July 7, 2010, the Los Angeles District Attorney charged defendant and appellant Michael Humberto Munguia in counts one and two of an information with the crime of criminal threats, in violation of Penal Code section 422, [1] and in counts three and four with assault with a firearm, in violation of section 245, subdivision (a)(2).[2] As to counts one and two, the information alleged that appellant personally used a firearm, a handgun, within the meaning of section 12022.53, subdivision (b), causing the offenses to become serious felonies within the meaning of section 1192.7, subdivision (c)(8), and violent felonies within the meaning of section 667.5, subdivision (c)(8). As to counts three and four, the information alleged that in the commission and attempted commission of the above offenses, appellant personally used a handgun within the meaning of sections 1203.06, subdivision (a)(1), and 12022.5, subdivision (a), also causing the offenses to become serious felonies pursuant to section 1192.7, subdivision (c)(8), and violent felonies within the meaning of section 667.5, subdivision (c)(8).

The information further alleged as to all counts, pursuant to section 186.22, subdivision (b)(1)(C), that the offenses were committed for the benefit of, at the direction of, and in association with a criminal street gang with the specific intent to promote, further, and assist in criminal conduct by gang members. The information also alleged that as to all four counts, appellant suffered two prior prison terms pursuant to section 667.5, subdivision (b).

A jury found appellant guilty as charged. It further found true as to counts one and two that appellant personally used a handgun within the meaning of section 12022.53, subdivision (b). It also found true as to counts three and four that in the commission of the offense, appellant personally used a handgun within the meaning of

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

[2]    Appellant was tried with codefendant David Alexander Duke (Duke), who is not a party to the instant appeal. Duke separately appealed his conviction, and on May 22, 2012, we found that there was sufficient evidence to support his conviction for the unlawful driving of a vehicle, but that there was insufficient evidence to support the gang enhancement. (*People v. Duke* (May 22, 2012, B230290) [nonpub. opn.].)

section 1203.06, subdivision (a)(1), and section 12022.5, subdivision (a). Finally, it found true as to all counts that pursuant to section 186.22, subdivision (b)(1)(C), the offenses were committed for the benefit of, at the direction of, and in association with a criminal street gang with the specific intent to promote, further, and assist in criminal conduct by gang members.

Appellant waived jury trial on the truth of the prior convictions and, after a court trial, the trial court found true that appellant suffered two prior convictions pursuant to section 667.5, subdivision (b).

The trial court sentenced appellant to a total term of 30 years four months in state prison as follows: In count three, the base count, the trial court sentenced appellant to four years, plus two enhancements, specifically an additional term of 10 years pursuant to section 186.22, subdivision (b)(1)(C), and to another 10-year term pursuant to section 12022.5, subdivision (a), for a total of 24 years on count three.

In count four, the trial court sentenced appellant to one-third of the midterm of one year. Pursuant to section 186.22, subdivision (b)(1)(C), the trial court sentenced appellant to a term of three years four months, which is one-third of 10 years. The total sentence on count four is four years four months. The trial court ordered the sentence in count four to run consecutively with the sentence in count three.

In count one, the trial court sentenced appellant to two years state prison, plus 10 years for the section 186.22, subdivision (b)(1)(C), benefit for the gang enhancement. The trial court stayed the sentence in count one pursuant to section 654. The trial court imposed and stayed the same sentence in count two.

As to the prison priors pursuant to section 667.5, subdivision (b), the trial court sentenced appellant to an additional one year for each of the two prior convictions for a total of two years to run consecutively with counts three and four.

Appellant timely appealed.

3

## STATEMENT OF FACTS[3]

I. *Prosecution Evidence*

On May 15, 2010 at 9:00 p.m., Jessie Salas (Salas) was standing outside his residence in East Valinda, California, with his friend Jesus Sanchez (Sanchez) when appellant got out of the passenger side of a 1984 Toyota van parked across the street. The van had been reported stolen about a month earlier. (*People v. Duke, supra*, B230290.) Appellant approached Salas and Sanchez, holding a semi-automatic handgun in one hand and a magazine clip in the other. Appellant asked if they were from "Townsmen," then stated, "This is Li'l Hill Gang's barrio and if I find out you fools are from Townsmen, I'll light your ass up with an AK-47." (*Ibid.*) Appellant displayed tattoos on his head and stomach indicating his Li'l Hill gang affiliation. When an unidentified person walked by, appellant hit him on the side of the head with the gun's magazine clip. Appellant then walked back to the van and got inside. Salas and Sanchez saw other men and a woman inside the van. Salas called 9-1-1.

About five or 10 minutes later, Los Angeles County Deputy Sheriff Russell Helbing, who was in a helicopter, located a van matching Salas's description about two to four miles from the crime scene. According to Deputy Helbing, "'It appeared to be just stopping and then was stationary. The vehicle lights were off, and then we saw the brake lights light up. That's what drew our attention to it. It appeared the vehicle was just stopping when we saw it.'" (*People v. Duke, supra,* B230290.) The van came to a stop across the street from the house of Mario Calderon, appellant's cousin and a fellow member of the Li'l Hill gang. Deputy Helbing saw Duke exit the van from the driver's door and appellant from the front passenger's door. He did not see anyone else in the van. Duke walked across the street toward the house, and several people came out of the garage and joined him. They headed south on the street. Appellant walked to the middle of the street where he was met by a man and the same woman who was seen earlier in the van, and they headed north on the street.

---

[3]     We adopt the facts as set forth in *People v. Duke*, *supra*, B230290.

About three minutes later, appellant and Duke were arrested and searched. A key ring with three keys was found on Duke. No firearm was recovered. When questioned by Los Angeles County Deputy Sheriff Robert Chism about his whereabouts that evening, Duke initially responded that he had been inside a nearby mall, then stated he had only been outside the mall. When Deputy Chism asked Duke where precisely he was at the mall so that video footage could be obtained, Duke "'blurted out'" that he was not the only person in the van and refused to say anything further. (*People v. Duke supra*, B230290.)

Deputy Chism testified as a gang expert familiar with both the Li'l Hill and Townsmen gangs. The location where appellant threatened Salas and Sanchez is in an area that overlaps the territories of both gangs. He opined that based on their self-admissions, tattoos and associations, appellant and Duke were active members of the Li'l Hill gang. Deputy Chism further opined that based on his own investigation and interview with Duke and the evidence presented at trial, Duke's driving of the van was for the benefit of, at the direction of, or in association with the Li'l Hill gang. Deputy Chism testified that it is typical for gang members to drive stolen vehicles between crimes because such vehicles are harder to trace. He also testified that Duke had been a member of the Li'l Hill gang less than a year and that Duke would have to work his way up in the gang to improve his "'status,'" and that "'something as simple as driving a vehicle . . . is showing that you're willing to put in work for the gang.'" (*People v. Duke, supra*, B230290.)

II. *Defense Evidence*

Appellant did not testify and presented no affirmative evidence in his defense.

**DISCUSSION**

I. *Appellant has not Demonstrated that Trial Counsel was Ineffective for Failing to Challenge a Juror*

    A.  <u>Proceedings Below</u>

    During voir dire, the following exchange took place:

    "[MR. ROSS [counsel for Duke]]:  What kind of person are you back in the jury room?

    "[PROSPECTIVE JUROR NO. 6665]:  Probably listen to both sides—his side and then might differ from mine.  I just have to weigh which one is, you know, better—  [¶] . . . [¶] . . . and come to a consensus and see what happens.

    "[MR. ROSS]:  Okay.  You heard the judge talk about, when someone's accused of a crime, they don't have to put on any evidence.  They can sit there and not cause a disturbance.  They can draw.  They can twiddle their thumbs.  I can sit next to him, and I can do absolutely nothing for three days.  And then I can get up and argue that [the prosecutor] hasn't proven his case.  [¶]  Is that okay with you if that's the way I choose to operate in this case?  Or are you expecting something more from me?

    "[PROSPECTIVE JUROR NO. 6665]:  I'd like to expect more something from you.

    "[MR. ROSS]:  You think I've got to do something?

    "[PROSPECTIVE JUROR NO. 6665]:  All right.

    "[MR. ROSS]:  Whatever it is, I got to do something?

    "[PROSPECTIVE JUROR NO. 6665]:  That's the point.

    "[MR. ROSS]:  Do you agree, Juror Number [2563]?

    "[PROSPECTIVE JUROR NO. 2563]:  I was on a case, and that's exactly what happened.  I was expecting them to do something, and they didn't do anything.  They sat there, and I thought it was very odd because of television and all the things you see.  But then I understand how it works.  Exactly what you said; they have to prove it.  They have to have the evidence to prove it.

    "[MR. ROSS]:  But are you okay?

6

"[PROSPECTIVE JUROR NO. 2563]: I'm okay with it, and I understand it.

"[THE COURT]: It's counterintuitive.

"[PROSPECTIVE JUROR NO. 2563]: You expect it to come from both sides. I was surprised, but it didn't stop us from going through all the evidence.

"[MR. ROSS]: How about you, Juror Number [6693]? Do you think I have to do something?

"[PROSPECTIVE JUROR NO. 6693]: No.

"[MR. ROSS]: Okay. [¶] You're okay if I just do absolutely nothing and look up at the asbestos ceiling?

"[PROSPECTIVE JUROR NO. 6693]: If that's what you choose to do.

"[MR. ROSS]: Hope it doesn't fall on me. [¶] You understand that if I – if I'm doing that for a reason, that I'm defending my client for that particular reason, that I don't have to prove anything? I don't have any burden? That it's all on the prosecutor and, for whatever reason, that's the choice I make, you can't hold it against Mr. Duke?

"[PROSPECTIVE JUROR NO. 6693]: That's correct.

"[MR. ROSS]: And you shouldn't hold it against me?

"[PROSPECTIVE JUROR NO. 6693]: That's correct."

B. Analysis

Appellant contends that his trial counsel rendered ineffective assistance by failing to challenge Juror No. 6665 for cause "after [he] expected the defense to put on a case." This claim lacks merit.

To establish ineffective assistance of counsel, a defendant must show that counsel's performance "fell below an objective standard of reasonableness," and that "there is a reasonable possibility that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland v. Washington* (1984) 466 U.S. 668, 688, 694.) Our Supreme Court has "repeatedly stressed 'that "[if] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.'

7

[Citations.] A claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding. [Citations.]" (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266–267.)

Appellant's trial counsel did not act deficiently in failing to challenge Juror No. 6665 for cause. When viewed in context, it is clear that when this juror said that he "[would] like to expect" defense counsel to do something, he meant something more than "draw" or "twiddle [his] thumbs" or "do absolutely nothing."

Our conclusion is bolstered by the trial court's jury instructions. Appellant's argument notwithstanding, the jury was told that the People had to prove that appellant was guilty beyond a reasonable doubt, that appellant did not have to testify, and that he could rely upon the state of the evidence and argue that the People did not meet their burden. We presume that the jury followed the trial court's instructions. (*People v. Myles* (2012) 53 Cal.4th 1181, 1212.)

Even if trial counsel erred in failing to challenge Juror No. 6665, appellant has not demonstrated prejudice. (*Strickland v. Washington*, *supra*, 466 U.S. at p. 687 [to prevail on a claim for ineffective assistance of counsel, the defendant must show that counsel's defective performance prejudiced the defendant].) A defendant is prejudiced if it is reasonably probable that a more favorable outcome to the defendant would result absent counsel's substandard performance. (*Id*. at p. 694.) All appellant argues is that "this juror's guilty verdict could have been based on the fact that appellant did not present his own defense." In light of the overwhelming evidence of appellant's guilt and the breadth of the jury instructions given, we cannot find prejudice.

Finally, we reject appellant's contention that trial counsel's alleged error resulted in structural error in the trial, negating any requirement that appellant affirmatively demonstrate prejudice on appeal. As set forth above, Juror No. 6665 was not biased.

II. *The Testimony of the Prosecution's Gang Expert did not Exceed the Scope of Permissible Gang Opinion*

Appellant contends that the trial court erred by allowing Detective Chism, a gang expert witness, to opine regarding guilt. As pointed out by the People, and not challenged in appellant's reply brief, appellant did not raise this objection below. As a result, appellant did not preserve the issue for appeal. (Evid. Code, § 353, subd. (a).) Our analysis could stop here.

For the sake of completeness, we note that, on the merits, appellant's claim fails. Detective Chism had an opinion as to whether "the assault with a firearm was committed for the benefit [of], at the direction or in association with [the] Li'l Hill Gang." Evidence of criminal street gang sociology is beyond the common experience and is a proper subject of expert testimony. (*People v. Gonzalez* (2005) 126 Cal.App.4th 1539, 1550; *People v. Killebrew* (2002) 103 Cal.App.4th 644, 656–657, disapproved on other grounds as discussed in *People v. Vang* (2011) 52 Cal.4th 1038, 1047–1048.) A gang expert witness may render an opinion regarding gang-related activity in the form of a hypothetical question and answer as long as the hypothetical rests upon evidence at trial. (*People v. Gonzalez*, *supra*, at p. 1551, fn. 4; *People v. Gardeley* (1996) 14 Cal.4th 605, 618–619; *People v. Valdez* (1997) 58 Cal.App.4th 494, 507.) Thus, Detective Chism's testimony was permissible.

The cases cited by appellant in his opening brief (e.g., *People v. Killebrew*, *supra*, 103 Cal.App.4th 644) are readily distinguishable. Unlike those cases, in the instant case, Detective Chism was not only the gang expert but also the lead investigating officer. As such, he was familiar with the facts of this case and the testimony of the witnesses who investigated this case. Much of the information that a different gang expert could have only assumed or inferred to proffer an opinion as to whether the crimes charged were gang-related were within Detective Chism's personal knowledge and thus a proper basis for his expert opinion testimony.

And, even if Detective Chism's expert testimony was improper, the admission of that evidence was harmless. (*People v. O'Shell* (2009) 172 Cal.App.4th 1296, 1310,

fn. 11.)  There is no reasonable likelihood that a more favorable outcome for appellant would have been reached absent this testimony.  (*People v. Watson* (1956) 46 Cal.2d 818, 836.)  The jury was specifically instructed regarding the scope of the expert testimony.  And, the jury heard overwhelming evidence that a fellow gang member drove appellant to a location in which appellant threatened two men regarding the territory of appellant's gang, and committed an assault at that location while flashing his gang tattoos.  No reasonable juror would have failed to recognize the applicability of the gang allegation.

III.  *There was no Instructional Error Regarding the Burden of Proof and the Trial Court was not Required, Sua Sponte, to Specify to the Jury that Every Element Must be Proven Beyond a Reasonable Doubt*

Appellant contends that the instructions failed to inform the jury that all elements of the charged offenses must be proven beyond a reasonable doubt.  The same argument was rejected in *People v. Ramos* (2008) 163 Cal.App.4th 1082, 1087–1088 and is rejected here.

The trial court used the language of CALCRIM No. 220 to instruct the jury regarding the prosecution's burden of proof.  In other instructions, it instructed the jury regarding each element that the prosecution had to prove for each of the charged offenses, and the enhancement instruction specified the "reasonable doubt" standard.  Reading the instructions as a whole, there is no reasonable likelihood that the jurors, who are intelligent persons capable of understanding and correlating all instructions, did not understand that each element of the charged offenses had to be proven beyond a reasonable doubt.  (*People v. Ramos*, *supra*, 163 Cal.App.4th at p. 1088.)

IV.  *The Trial Court Properly Denied Appellant's Motion for New Trial*

Appellant argues that the trial court erred in denying his motion for a new trial on the ground of ineffective assistance of counsel.  Specifically, appellant claims that his trial counsel's failure to call Alyssa Gonzales (Gonzales) as an alibi witness amounts to a denial of due process.

Although not enumerated as one of the statutory grounds for new trial in section 1181, a trial court may grant a motion for a new trial on the ground of ineffective

10

assistance of counsel.  (*People v. Fosselman* (1983) 33 Cal.3d 572, 582–583.)  To prevail, the defendant must demonstrate both that his counsel's performance was deficient when measured against the standard of a reasonably competent attorney and that his counsel's deficient performance resulted in prejudice to the defendant in the sense that it so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result.  (*People v. Callahan* (2004) 124 Cal.App.4th 198, 209, 212.)

A.  Background

On January 12, 2011, the trial court held a closed proceeding regarding appellant's request for a new trial based upon a letter appellant wrote to the trial judge.  Appellant informed the trial court that his trial counsel failed to call Gonzales, who would have testified that she was with appellant during the time the crime was committed.

Lisa H. Mattern, appellant's trial counsel, informed the trial court that appellant did not give her specific names or contact information of alibi witnesses (other than codefendant Duke, who elected not to testify).  In particular, appellant never told Ms. Mattern about Gonzales.

The trial court found that there was a conflict between appellant and Ms. Mattern regarding the alibi witnesses and relieved her as appellant's attorney.  New counsel was appointed, and he promptly filed a motion for new trial.  In the motion, appellant argued that Gonzales would have provided an alibi for him at the time of the crime, but that Ms. Mattern never contacted her.  In support of his motion, appellant filed his own declaration as well as a declaration from his attorney, who attested that he spoke with Gonzales and she confirmed appellant's alibi.

Ms. Mattern also filed a declaration, detailing all of her visits and communications with appellant.  She stated that "[a]t no time before or during the jury trial did [appellant] tell [her] that he was with a girl at the house when the incident happened.  [Appellant] never gave me either a potential witness name nor any type of contact information for the girl he refers to in his declaration."

11

At the hearing on appellant's motion, the trial court considered appellant's declaration and Ms. Mattern's declaration and found Ms. Mattern's declaration more credible. Her declaration contained specifics; appellant's declaration was too general. The trial court further found that Ms. Mattern had numerous and continuous contact with appellant and that she discussed at great length the case and potential witnesses, and that appellant was actively involved in the trial strategy. He had plenty of opportunities to notify his trial counsel of alibi witnesses. Thus, the trial court denied appellant's motion for new trial.

B. Analysis

Generally speaking, the denial of a motion for new trial is reviewed for abuse of discretion. (*People v. Navarette* (2003) 30 Cal.4th 458, 526.) However, an appellate court reviews the denial of a motion for new trial de novo when claimed errors of constitutional magnitude are at stake; but, the reviewing court defers to the trial court's express or implied findings if supported by substantial evidence. (*People v. Albarran* (2007) 149 Cal.App.4th 214, 224–225 & fn. 7.)

Against this backdrop, we conclude that the trial court did not err in denying appellant's motion for new trial. The motion was based upon appellant's assertion that he told Ms. Mattern about Gonzales and that she did not contact her or call her as an alibi witness. The trial court was presented with conflicting evidence on this issue, in the form of competing declarations from appellant and Ms. Mattern. After considering the motion and the evidence, the trial court found Ms. Mattern's declaration more credible. This factual determination is fatal to appellant's claim of ineffective assistance of counsel.

V. *The Sentencing Enhancements were Unauthorized*

Appellant contends that the imposition of two sentencing enhancements in count three were not authorized by law. The People concede that this contention has merit.

We agree. In *People v. Rodriguez* (2009) 47 Cal.4th 501 (*Rodriguez*), a jury found the defendant guilty of assault with a firearm and found the criminal-street-gang and personal-firearm-use allegations true, and the trial court imposed sentence on the assault and on both enhancements. (*Id*. at p. 504.) Our Supreme Court held that the trial court's

12

imposition of both enhancements violated "section 1170.1, subdivision (f), which prohibits the imposition of additional punishment under more than one enhancement provision for 'using . . . a firearm in the commission of a single offense.'" (*Rodriguez, supra*, at p. 504.) Appellant's use of a firearm, like the defendant in *Rodriguez,* "resulted in additional punishment not only under section 12022.5's subdivision (a) (providing for additional punishment for personal use of a firearm) but also under section 186.22's subdivision (b)(1)(C), for committing a violent felony as defined in section 667.5, subdivision (c)(8) (by personal use of firearm) to benefit a criminal street gang. Because the firearm use was punished under two different sentence enhancement provisions, each pertaining to firearm use, section 1170.1's subdivision (f) requires imposition of 'only the greatest of those enhancements' with respect to each offense." (*Rodriguez, supra*, at p. 509.) Here, the punishment imposed on each enhancement was the same: ten years. Thus, only one enhancement should have been imposed.

Appellant also claims that the enhancements imposed on counts one and two were unauthorized because those enhancements (for personal use of a firearm within the meaning of section 12022.53, subdivision (b), and for commission of a violent felony to benefit a street gang pursuant to section 186.22, subdivision (b)(1)(C)) are inapplicable here. The People also concede, and we agree.

The list of felonies as to which a section 12022.53 enhancement may apply is set forth in section 12022.53, subdivision (a). A violation of section 422 is not among the listed felonies. And, in order for the gang enhancement to apply, the underlying crime must be a violent felony as defined in subdivision (c) of section 667.5. (*Rodriguez, supra*, 47 Cal.4th at p. 505.) Because section 422 is not listed as a violent felony, the enhancements on these counts must be stricken as well.

13

## DISPOSITION

The judgment is affirmed as modified.  The matter is remanded to the trial court with directions to strike one of the sentencing enhancements imposed on count three and to strike both sentencing enhancements imposed on counts one and two.  The abstract of judgment shall be amended accordingly.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, Acting P. J.
    ASHMANN-GERST

We concur:

_____, J.
    CHAVEZ

_____, J.*
    FERNS

_____

*    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.